UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN CHRISTIAN,<br><br>　　　　　Petitioner,<br>　vs.<br>BEN CURRY, Warden,<br><br>　　　　　Respondent. | No. C 07-1082 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

### INTRODUCTION

On February 22, 2007, petitioner Dean Christian, a California state prisoner proceeding pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ of habeas corpus. For the reasons stated herein, the petition is hereby DENIED.

### BACKGROUND

In 1985, petitioner and an accomplice, in the course of three separate incidents, kidnapped and robbed four victims. A jury convicted petitioner of multiple counts of robbery and kidnapping for the purpose of robbery, and the trial court sentenced petitioner to a term of life in prison.[1] (Ans. Ex. 5 at 1.) In May 2005, the Board found

---

[1] The trial court stayed sentencing on seven of the eight counts. (Ans. Ex. 5 at 1.) Thereafter, the state appellate court reversed the conviction on two of the stayed counts, with directions to the trial court that said counts be dismissed. (Id. Ex. 3 at 9, 12.)

1

petitioner unsuitable for parole, on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Ans. Ex. 2 at 61.)

In reaching its decision, the Board accepted the following facts, which, the Board noted, were taken from the state appellate court's opinion on petitioner's direct appeal:

> On February 22nd, 1985. . .[a]t approximately 7:15 p.m., Elias [ ] Alfaro. . . was in a phone booth near a convenience market when [petitioner] approached and asked for Alfaro's ID card. [Petitioner] flashed an identification card and told Alfaro he was from Immigration. When Alfaro told him he did not have a card, [petitioner] forced him into a nearby truck and handcuffed him. [Marvin] Eddings [petitioner's accomplice]. . .came out of the market and got into the truck on the passenger side and [petitioner] drove. Both men struck Alfaro. They stopped at a car wash less than a mile away and stole Alfaro's cash, which was 30 dollars, his watch, a ring and his car keys. He was uncuffed and released. Alfaro called a friend, who took him back to the market, but his car was gone. When he found the car several blocks away the next day, he noticed a new pair of Vans shoes were missing.
>
> At approximately 9:30 that same night, Margarito Garcia was walking home when [petitioner] and Eddings drove up, said they were from Immigration and asked if he had a green card. When Garcia said no, the two men handcuffed him and put him into the truck. While getting in, Garcia saw a rifle behind the driver's seat. Again, [petitioner] was driving and Eddings sat on the passenger side waving a pistol. Garcia, sitting in the middle, was hit several times as he was driven to a less populated location about three blocks away. [Petitioner] and Eddings robbed Garcia of approximately 120 dollars before uncuffing and releasing him. Shortly thereafter, [petitioner] and Eddings were stopped and arrested. Officers seized two toy pistols, a loaded shotgun and a set of toy handcuffs from the truck. An inventory search later led to the discovery of Alfaro's missing shoes in the truck.
>
> A month earlier, on January 25th, 1985, Marco Lanfray [ ] and Concepcion [ ] Lopez were robbed in a very similar fashion. While both [petitioner] and Eddings were charged in that incident, only [petitioner] was convicted. Eddings was acquitted. [Petitioner] used the same modus operandi. He and a companion called out to the two victims and asked if they had green cards. After responding they did not, the victims were informed they were ["]under arrest["], handcuffed and put into the truck. They were driven to a residential area several blocks away and robbed. Lopez lost approximately 400 dollars in cash. Lanfray lost approximately 250 dollars and a watch. [Petitioner] was convicted of four robberies and four kidnappings for the purpose of robbery. Eddings was convicted of two robberies and two kidnappings for the purpose of robbery. The jury also found armed allegations true, as to both men involved in the kidnapping and robbery of Garcia.

(Id. Ex. 2 at 14–16.)

At the parole hearing, the Board reviewed petitioner's record, including the

circumstances of his commitment offense, his criminal history, and his behavior in prison.[2] With respect to the commitment offense, the Board found the offenses "were carried out in a very deceitful manner and quite callous, with the inmate pretending to be an INS agent" (id. Ex. 2 at 61), and, further, putting the victims in fear of taking action "because of their immigration status" (id. Ex. 2 at 62). The Board was also concerned that the acts against these unsuspecting victims were "carried out with a great amount of dispassion" and that they were "calculated." (Id. Ex. 2 at 61.) The Board took serious note that the motivation for the crimes "was extremely trivial, in that the whole reason to do these robberies was to pay off some gambling debts that the prisoner owed." (Id. Ex. 2 at 62.)

The Board also examined petitioner's criminal history. Although petitioner has no record of juvenile criminal activity, petitioner's adult criminal history includes convictions for assault with a deadly weapon, assault and battery, grand theft auto, and rape, as well as driving under the influence. (Id. Ex. 2 at 17–18.) .

Additionally, the Board examined petitioner's institutional record, which, along with ten minor violations, included eight serious disciplinary citations, the most recent of the latter having occurred in 1992 and none involving violence or possession of a weapon, but at least one involving possession of marijuana. (Id. Ex. 2 at 30-31, 34.)

The Board's review of petitioner's institutional record also included an examination of his psychological evaluation. According to that report, petitioner's potential for violence if released was "estimated to be slightly higher than the average citizen in the community." (Id. Ex. 2 at 39.) Further, the report expressed the following concern: "Should this inmate abuse alcohol or illicit drugs again, his violence potential would be considered much higher than the average citizen in the community." (Id.)

---

[2] In the course of the hearing, the Board erroneously described petitioner's sentence as a term of "seven years to life" (id. Ex. 2 at 1) rather than a "life" term. There is no indication in the record, however, that such distinction was in any manner significant to the Board's determination to deny parole.

1  The Board commended petitioner for his skills training, and his participation in
2  self-help programming.  In particular, with respect to the former, the Board acknowledged
3  petitioner's extensive and varied work history, which included experience in textiles, food
4  services, carpentry, furniture-making, and diesel mechanics, and, with respect to the
5  latter, acknowledged petitioner's participation in AA, NA, anger management, and a
6  number of other self-help programs.  (Id. at 68–69.)

7  After a full hearing, during which all of the above evidence was considered, the
8  Board found petitioner unsuitable for parole.  (Id. at 61.)  In response to the Board's
9  decision, petitioner filed state habeas petitions, later denied, in the Orange County
10 Superior Court, California Court of Appeal, and California Supreme Court.  (Id. Exs.
11 11–13.)

12 In 2007, petitioner filed the instant federal habeas petition, alleging that the
13 Board's decision violated his right to due process because the decision (1) was not
14 supported by sufficient evidence and because it rests upon the unchanging facts of his
15 commitment offense,[3] and (2) was inconsistent with the California Department of
16 Corrections and Rehabilitation's ("CDCR") decision to house him in a facility for
17 "non-violent" inmates.  (Pet. at 6h, 6n.)

## DISCUSSION

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

---

[3] This claim represents a consolidation of two claims presented in the petition.

4

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254 (e)(1). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Where there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the opinion issued November 1, 2005 by the Orange County Superior Court. (Ans. Ex. 11 ); see Nunnemaker, 501 U.S. at 801–06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

**B.     Petitioner's Claims**

    **1.     First Claim**

Petitioner claims the Board's decision violates his right to due process because it is not supported by sufficient evidence and because the Board continues to rely on the circumstances of the commitment offense. (Pet. at 6h.) The superior court rejected these claims, finding that the Board's decision was based on sufficient evidence, and that the Board relied on factors other than and in addition to the circumstances of the commitment offense. (Ans. Ex. 11 at 3, 5–6.)

A denial of parole complies with due process provided there is "some evidence" to support the parole board's decision. A parole board's decision deprives a prisoner of due process if such decision is not supported by "some evidence in the record," or is

5

otherwise "arbitrary." See Superintendent v. Hill, 472 U.S. 445, 454–55 (1985); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006).  Further, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).  Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such determination must be supported by some evidence having some indicia of reliability. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Additionally, in assessing whether there is "some evidence" to support the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations.  Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).  The regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[4]  One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c).  Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he

---

[4] The circumstances tending to show an inmate's unsuitability are:  (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c).  The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

6

1  motive for the crime is inexplicable or very trivial in relation to the offense." Id.,
2  § 2402(c)(1)(D) & (E).  In addition to these factors, the Board is to consider "all relevant,
3  reliable information available."  Id., § 2402(b).

4        It is now established under California law that the task of the Board is to determine
5  whether the prisoner would be a danger to society if he or she were paroled.  See In re
6  Lawrence, 44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence"
7  requirement is that there exists some evidence that the prisoner constitutes such a danger,
8  not simply that there exists some evidence of one or more of the factors listed in the
9  regulations as considerations appropriate to the parole determination.  Id. at 1205–06.

10        In that regard, however, a parole authority's continued reliance on the
11  circumstances of the commitment offense as the sole basis for denying parole can, over
12  time, raise due process concerns.  See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir.
13  2003).  "[I]n some cases, indefinite detention based solely on an inmate's commitment
14  offense, regardless of the extent of his rehabilitation, will at some point violate due
15  process, given the liberty interest in parole that flows from the relevant California
16  statutes."  Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

17        Here, the Court cannot find the state court was unreasonable in concluding there is
18  some evidence to support the Board's decision that petitioner would pose a danger to
19  society if released.  In particular, the record contains some evidence to support the
20  Board's finding to that effect, including the circumstances of the commitment offense,
21  petitioner's criminal history, and his behavior in prison.

22        First, some evidence exists to support the Board's determination that the
23  circumstances of the commitment offense indicated petitioner presented a risk of danger
24  to society if released.  The record contains evidence that the commitment offense was
25  committed in an "especially heinous, atrocious or cruel manner," a circumstance tending
26  to show parole unsuitability, see 15 Cal. Code Regs. § 2402(c), in that the offense was, as
27  the Board put it, both "callous" and carried out "with a great amount of dispassion as to
28  what people were feeling."  (Ans. Ex. 2 at 61.)  Significantly, petitioner's victims,

because of their immigration status, were particularly vulnerable and essentially at the mercy of persons they believed to be INS officers. Further, at least two of the victims, after they were handcuffed, were subjected to gratuitous assault. Additionally, there was evidence to support the Board's finding that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." (Id.)  In particular, petitioner and his accomplice kidnapped and forcibly robbed their victims in order to pay off gambling debts. Given such circumstances, the Board's characterization of the offenses as callous and dispassionate and the motive for their commission as trivial in relation to those offenses is not unreasonable. While at some point, the circumstances of the commitment offense may cease to have probative value, they constitute at present some evidence of petitioner's dangerousness.

Petitioner's criminal history and institutional behavior constitute further evidence of petitioner's unsuitability for parole. Petitioner has a serious criminal history, and one that reflects a pattern of increasing dangerousness. (See id. Ex. 2 at 17-18 (listing prior arrests and convictions in chronological order).)  Also, while in prison, petitioner committed at least eight serious disciplinary infractions. Because the Board relied on such evidence, petitioner's claim that the Board's decision violated his right to due process by relying solely on the unchanging factors of the commitment offense is without merit.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**2.    Second Claim**

Petitioner claims the Board's denial of parole violates his right to due process because it is inconsistent with the decision by the CDCR to house him in a facility for "non-violent" inmates.

Petitioner has not shown that he is entitled to habeas relief on this claim. Specifically, petitioner has pointed to no legal precedent holding it is a violation of his federal constitutional rights for the CDCR to house him in a facility for non-violent

1 inmates and for the Board at the same time to find him unsuitable for parole.  Moreover,
2 one such determination does not necessarily imply the other.  The CDCR's placement of
3 an inmate in any particular housing unit reflects an assessment of such inmate's potential
4 for violence in the context of the prison population, whereas the Board's determination is
5 based on an assessment of the risk of danger posed by the inmate to society outside of the
6 prison context.

   Accordingly, petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

Because the record contains, at a minimum, some evidence to support the Board's determination that petitioner would present an unreasonable risk of danger to society if released, and because petitioner has made an insufficient showing as to his entitlement to relief on his other claim, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: December 28, 2009

_____
MAXINE M. CHESNEY
United States District Judge